## Petrey's Adm'r et al. v. Petrey

(Decided Jan. 21, 1936.)

STEPHENS & STEELY for appellants.

J. B. JOHNSON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Frank Petrey, a resident of Whitley county, died in January, 1934, intestate, and left surviving a widow, Ellen Petrey, and three children by a former wife, namely, Mrs. Melissa Goodwin and Walter and Claude Petrey, as his only heirs at law. Thereafter Walter Petrey was duly appointed and qualified as administrator of his estate. Appraisers appointed made an appraisement of the personal property, but this has not been put to record. Nothing was set apart to the widow under the provisions of section 1403 of the Statutes. The administrator sold some of the personal estate and applied the proceeds, in part at least, to the payment of the debts against the estate. At the time of his death, decedent owned a farm containing approximately 60 acres.

On August 28, 1934, Ellen Petrey instituted this action against the administrator and children of her deceased husband, setting up the foregoing facts, and further alleging that at the time of his death, appellant owned personal property enumerated in the petition of a value of $3,500; that the farm above referred to was of a value of not less than $3,500. She further alleged in substance that in July, 1934, at a time when she was under great mental distress, weak in mind and body, and not able to appreciate her rights under the laws of this state, and when she was not advised with respect thereto and had no opportunity to procure advice, Walter Petrey misrepresented the facts as to her rights as surviving widow of Frank Petrey and stated to her that she could not get any money out of the estate of her husband, which statements were untrue and known to him to be untrue and were made for the purpose of inducing her to rely upon same and to perpetrate a fraud upon her and thereby induce her to sign some kind of deed or release of all her rights, title, and interest in the estate; that her interest in the real estate, personal property, and growing crops on the farm at the time of the death of her husband was of the

aggregate value of at least $1,750; that on July 31, 1934, she advised Walter Petrey she would stand upon her rights as widow of decedent and tendered back to him the consideration paid her for the property above enumerated, but her offer was refused. She prayed that the estate of Frank Petrey be settled and that the purported conveyance be canceled, set aside, and held for nought, and the land be sold and the proceeds divided as required by law, and that she be adjudged her share out of the money derived from the sale; that the administrator be required to administer the personal property as provided by law.

By an amended petition she alleged that the three children attempted to take title to the property and real estate, and that she did not know at the time the suit was filed that all of them were grantees in the purported deed which had been recorded thereafter. She further alleged that the real estate was worth $5,000, instead of $3,500, as set forth in the original petition.

By answer defendants traversed the allegations of the petition and affirmatively alleged that the farm was not worth more than $1,500. They also enumerated the personal estate left by decedent and the value thereof, which was something less than $300. They alleged that the expenses incident to the burial of decedent were $196.50, and at the suggestion and with the consent of plaintiff and by agreement of all parties concerned, some of the livestock and corn was sold to pay same. They further alleged that after the death of Frank Petrey, plaintiff became dissatisfied with living alone and away from her children and repeatedly solicited them to purchase whatever right she had in the estate; that after these repeated solicitations they had a conference and decided to purchase plaintiff's right in the farm at the price she asked for all her interest in the estate; that after they bought her interest she was told to take such of the growing crops and household goods as she desired, which she did.

The issues were completed by a reply denying the affirmative allegations of the answer and elaborating and extending the allegations with respect to plaintiff's mental condition and the fraud and misrepresentations made to procure her to sign the deed.

On final hearing it was found by the chancellor that

certain enumerated articles, the personal property of decedent, which passed into the hands of the administrator and a part of which had been sold by him, was of a value of $175.21; that all this property was exempt to plaintiff as the widow of decedent, and it was adjudged that she recover therefor; that certain other enumerated articles of personal property were of no value whatever and that no accounting be required for same. It was found by the chancellor that a homestead was not laid off or assigned to the widow and that the administrator took charge of the real estate and rented pastures for which he collected $15; that the administrator realized $120 for corn grown on the farm by tenants; that the widow was entitled to one-third of the amount received from these rentals, or the sum of $45, which it was adjudged she recover. It was further adjudged that by reason of the relationship of the parties, the mental and physical condition of plaintiff at the time the deed in question was made, coupled with inadequacy of consideration as shown by the record, she was entitled to the relief sought and that the deed be canceled, set aside, and held for nought; that the land was indivisible; and that the entire tract be sold as a whole and out of the proceeds plaintiff be paid the value of her dower according to Dr. Wigglesworth's mortality tables, subject, however, to a credit of $250, the consideration paid her when the deed was made; and that the residue of the proceeds be divided among the defendants as their interest appears; and the master commissioner was directed to make the sale. Defendants are appealing.

The evidence of various witnesses as to the value of the farm varied considerably, but according to the evidence of those having no interest and not related to the parties, the farm is worth from $3,000 to $4,000. The opinion of the chancellor, as to the value of the personal property and the crops growing, is in accord with the weight of the evidence. According to the evidence for appellee, including some relatives of appellant, appellee has for a number of years been very nervous and emotional and often, and especially after the death of her husband, would give vent to her emotions by shouting, singing, and crying so loudly she could be heard by neighbors a considerable distance away. These outbursts would occur at her home and other places and often when she would be walking a-

long the highway. Many witnesses testified concerning her acts and conduct, and gave as their opinion that after the death of her husband and at the time she made the deed to her stepchildren she was mentally unbalanced, and their evidence indicates that she did not have mental capacity sufficient to know and appreciate the nature and quality or the consequences of business transactions. On the other hand, there is some evidence that she was possessed of considerable business acumen, and Walter Petrey and a physician who is a brother of decedent testified that at the time the deed was made she had mind sufficient to and did understand the transaction. However, they admitted that she was very emotional and the doctor pronounced her a religious fanatic. The evidence clearly indicates inadequacy of consideration for the deed.

It is first argued by counsel for appellant that the cancellation of deeds or like instruments is not favored by courts and evidence to warrant the setting aside of such instruments should be clear and convincing.

The power reposed in courts of equity to set aside deeds solemnly entered into between the parties is an extraordinary one and should not be lightly exercised. Lacey v. Layne, 190 Ky. 667, 228 S.W. 1. The burden of establishing mental incapacity and undue influence is upon the person who asserts and relies upon it. Generally speaking, one possessed of mental capacity sufficient to comprehend what he is doing and to know and appreciate the character and consequence of his acts may, in the absence of fraud or undue influence, dispose of his property in any manner he may choose and give his land to relatives or others or sell it for an inadequate consideration. Lewis v. Lewis, 224 Ky. 18, 4 S.W.(2d) 1106; Belcher v. Belcher, 202 Ky. 104, 259 S.W. 54; Risner v. Risner, 261 Ky. 359, 87 S.W.(2d) 970. Ordinarily, inadequacy of consideration unaccompanied by mental incapacity, fraud, or undue influence is not sufficient to warrant courts to set aside a deed; however, it may be considered in evidence as bearing on these other elements, and when coupled with them may authorize the setting aside or cancellation of the deed. Here, as already indicated, we have inadequacy of consideration, coupled with proof that appellee was highly emotional and a fanatic and that she did not have ordinary poise or balance of mind.

Walter Petrey bore a confidential relation to her, both as her stepson and as the personal representative of her deceased husband. Where such confidential relation exists and a conveyance so beneficial to the grantee is made, the burden is upon one thus benefited to show that the grantor acted freely and voluntarily and to establish that the transaction was fair and equitable. Briscoe v. Briscoe, 225 Ky. 804, 10 S.W.(2d) 294; Bacon v. Dabney, 183 Ky. 193, 208 S.W. 807; Moore's Adm'r v. Edwards, 248 Ky. 517, 58 S.W.(2d) 915.

In Faucett v. Faucett, 64 Ky. (1 Bush) 511, 89 Am.Dec. 639, it is indicated that executors or trustees may not create in themselves interests opposed to that of the party or parties for whom they act, or traffic in the assets of the estate to their own emolument, and that this principle applies alike to administrators. To the same effect, see Mitchum's Heirs v. Mitchum's Adm'rs, 3 Dana, 260.

Taking into account the inadequacy of consideration, the confidential relation existing between the parties, and the evidence as to the mental status of appellee, it is manifest that this court would not be authorized to disturb the action of the chancellor in setting aside the deed.

It is further argued by counsel for appellant that even if the evidence authorized such action, a cancellation is not permissible unless the complaining party restores the consideration received. It is a rule of general application that the one receiving money as a consideration for a deed or under other contract cannot avoid the deed or contract on the ground of fraud, etc., unless he restores the money or consideration received; but there is an equally well-recognized exception to this general rule where in any event the complaining party is entitled to retain the amount received. Fox v. Hudson's Ex'x, 150 Ky. 115, 150 S. W. 49, Ann. Cas. 1914A, 832.

In this instance it clearly appears that appellee was entitled to much more than she received under the transaction which she is seeking to avoid. The same rules apply in cases of this character as do in cases of compromise settlement. For a full discussion of the rules relating to restoration in the latter class, see the recent case of Kentucky Central Life &

Accident Insurance Co. v. Burrs, 256 Ky. 64, 75 S.W. (2d) 744. Since in this instance the party seeking to avoid the conveyance is entitled to much more than she has received, the exception to the general rule applies.

Finally, it is argued in effect that the court erred in adjudging a sale of the land because such action is not authorized unless it is both alleged and proven that the land is not susceptible of division. It is true that none of the witnesses were asked the specific question as to whether the land could be divided among the parties in interest without impairing its value or the value of their respective shares or interests; but this is unnecessary if on the whole the evidence is sufficient to show such state of case. As stated in brief for appellant, it is alleged in the petition that the farm contains about 165 acres, but according to the evidence of Walter Petrey it contains only about 60 acres and over half of this is so wet and swampy that it cannot be cultivated but has to be used for pasturage. Taking into consideration the fact that the dwelling and other buildings are clustered on one portion of the farm, the size of the farm and the amount that is susceptible of cultivation, and other evidence concerning the character, nature, and lay of the land, it is apparent that the court did not err in adjudging that it was not susceptible of division as was alleged in the petition.

The finding of the chancellor on all matters adjudged is substantially supported by the evidence, and in such circumstances, or where the mind would be left in doubt as to the correctness of the chancellor's finding, it will not be disturbed on appeal. Henson v. Jones, 247 Ky. 465, 57 S.W.(2d) 498, and cases therein cited.

Wherefore the judgment is affirmed.