THOMPSON, JUDGE:
Alicia L. Peterson appeals from an order of the Jefferson Circuit Court granting summary judgment to Grange Property & Casualty (Grange) and dismissing her complaint on the basis that she did not qualify for underinsured motorist (UIM) coverage because she was not an "insured" as defined in Grange's insurance policy. Because we agree Peterson does not qualify *885 as an insured and public policy considerations do not mandate a different outcome, we affirm.
On February 13, 2016, Laura Zirnheld's vehicle was involved in a collision with Mary Haeberlin. Peterson was a passenger in Zirnheld's vehicle at the time of the accident. Peterson was severely injured and sought recovery in Jefferson Circuit Court from Haeberlin. Peterson settled her claim with Haeberlin and, subsequently, filed an amended complaint against the insurer on Zirnheld's vehicle, Grange, seeking UIM coverage.
Under the Grange policy, Zirnheld had UIM coverage of $100,000. The policy defined an "underinsured motorist" as "a party with motor vehicle liability insurance coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident." The policy included the following definition of an "insured" for purposes of UIM:
B. "Insured" as used in this Part means:
1. You or any family member;
2. Any other person, other than a person defined in B.1. of this definition, while occupying your covered auto with a reasonable belief that that person is entitled to do so, if that person is not insured for Underinsured Motorists Coverage under another policy.
Grange moved for summary judgment upon discovering that Peterson had her own UIM coverage through GEICO at the time of the collision. Grange asserted that because of this coverage Peterson did not qualify as an "insured" under the policy. Peterson conceded that she has UIM coverage through GEICO, which would pay regardless of what Grange does, but seeks to recover UIM benefits under both policies, claiming that otherwise she will not be fully compensated for her injuries. The circuit court granted Grange's motion for summary judgment and dismissed Peterson's action.
The standard of review for granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." Scifres v. Kraft , 916 S.W.2d 779, 781 (Ky. App. 1996) ; Kentucky Rules of Civil Procedure 56.03. Summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant.' " Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476, 483 (Ky. 1991) (quoting Paintsville Hospital Co. v. Rose , 683 S.W.2d 255, 256 (Ky. 1985) ). Because summary judgment only involves legal questions and factual findings are not at issue, "an appellate court need not defer to the trial court's decision and will review the issue de novo. " Lewis v. B & R Corp. , 56 S.W.3d 432, 436 (Ky. App. 2001).
On appeal, Peterson's sole contention is that Grange's definition of an "insured" qualifies as a standard escape clause and, thus, is unenforceable under Kentucky law as violative of public policy. Grange asserts that Kentucky has done away with the escape clause distinctions and that public policy is not violated because Peterson has coverage through GEICO.
Both parties ignore that optional UIM coverage is fundamentally different than other motorist insurance coverage mandated under the Motor Vehicle Reparations Act (MVRA). This distinction is central to our analysis of why the Grange exclusion is enforceable.
*886 KRS 304.20-020(1) mandates that uninsured motorist (UM) coverage be included in automobile liability policies unless rejected in writing. KRS 304.39-320(2) specifies that UIM coverage is optional but available if requested by the insured. The statute states:
Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering.
Id.
In Philadelphia Indemnity Ins. Co., Inc. v. Tryon , 502 S.W.3d 585, 588-92 (Ky. 2016), the Kentucky Supreme Court explained how UIM coverage is different from other insurance coverage and contrasted it with UM coverage. First, the Court explained that "while the MVRA makes UIM coverage optional, supplemental insurance, the subsection relating to casualty-insurance contracts expressly forbids contracts that do not include UM benefits." Id. at 588-89. In fact, the statute allowing for optional UIM coverage also states that "insurers are free to set their own terms and conditions of coverage." Id. at 590 (footnote omitted). Ultimately, the Court held that exclusions should be evaluated under the rules of contract and reasonable UIM coverage exclusions are permissible and not violative of Kentucky public policy. Id. at 591.
Additionally, the UIM policy provision only mandates requested coverage to the insurance company's "own insured" who is purchasing the insurance coverage and not to others that may optionally be covered. See Nationwide Mut. Ins. Co. v. Hatfield , 122 S.W.3d 36, 40 (Ky. 2003) ("The clear intent of the underinsured motorist statute is to allow an insured to purchase additional coverage so as to be fully compensated for damages when injured by the fault of another individual."); James v. James , 25 S.W.3d 110, 114 (Ky. 2000) (upholding anti-stacking exclusion in UIM coverage to second-class insureds as "prior to the accident they had no expectation of any UIM recovery at all, given that UIM coverage is not statutorily required.") Allowing insurers to limit UIM coverage to its statutory requirements "strikes an adequate balance between the Commonwealth's interests in protecting drivers on its roadways with the insurance companies' desires to assess accurately the underwriting risks involved." Tryon , 502 S.W.3d at 592.
While Peterson could potentially recover under both UIM policies if the Grange policy did not exclude her as an insured, see Metcalf v. State Farm Mut. Auto. Ins. Co. , 944 S.W.2d 151 (Ky. App. 1997), we uphold this narrow exclusion as valid because it applies to UIM coverage. It is reasonable to limit optional coverage where the injured party is not the policyholder and has other primary coverage for her claims, and the provision is "an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage[.]" Tryon , 502 S.W.3d at 591 (quoting Simon v. Continental Insurance Co. , 724 S.W.2d 210, 212 (Ky. 1986), which quotes R.H. Long's The Law of Liability Insurance , § 5.10B).
Grange's UIM policy is reasonable because it covers the named insured and its exclusion provision is only effective if another *887 UIM policy is applicable. Peterson could have no expectations of UIM coverage under Zirnheld's policy until the accident took place. Because UIM coverage is personal to the insured, if Peterson desired additional UIM coverage she could have added it to her own policy with GEICO. See id. at 592 ("Individuals are perfectly capable of negotiating UIM coverage").
Accordingly, we affirm the order of the Jefferson Circuit Court granting summary judgment to Grange.
ALL CONCUR.